**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vanessa Chavez, | No. CV-23-08024-PCT-GMS |
| Plaintiff, | **ORDER** |
| v. | |
| Ford Motor Credit Company LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant WIRB, Inc.'s ("WIRB") Motion for Summary Judgment. (Doc. 41).[1] For the reasons discussed below, WIRB's Motion is granted.

## BACKGROUND

Plaintiff Vanessa Chavez is the owner of a Ford Fusion ("the vehicle"). (Doc. 52 at 1). Defendants are Ford Motor Credit Company, LLC ("Ford") and WIRB, Inc., the company Ford hired to repossess Chavez's vehicle. (Doc. 52 at 3). Chavez claims Defendant WIRB illegally repossessed her vehicle in breach of peace, violating two statutes: (1) the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, and (2) Arizona statute granting secured parties' rights to take possession of property after

---

[1] Despite the Court's instruction at oral argument not to file supplemental briefing, Plaintiff filed a Motion for Leave to File Short Supplemental Brief (Doc. 57). The Court considered the caselaw in Plaintiff's Motion. The Court denies Plaintiff leave to submit additional briefing. Since the Court is granting Defendant's Motion for Summary Judgment, the Court does not offer Defendant leave to respond to Plaintiff's motion.

default under certain circumstances, A.R.S. § 47-9609 ("Self-Help statute").  (Doc. 8 at 2).

In August 2020, Chavez purchased a Ford Fusion from a Ford dealer in New Mexico.  (Doc. 52 at 1).  Chavez obtained financing from Defendant Ford Motor Credit Company and was to repay Ford in monthly installments.  (*Id*. at 2).  The agreement between Chavez and Ford stated that, if Chavez defaulted, Ford could repossess the vehicle.  (*Id*.).  In August 2022, Chavez was in arrears.  (*Id*. at 3).  Ford arranged with Defendant WIRB to repossess the vehicle.  (*Id*.)

On August 11, 2022, WIRB employees, Mike Shell and Dawn Youngs, went to a Safeway grocery store parking lot to repossess the vehicle.  (*Id*.).  Upon arrival, they positioned the tow truck behind the vehicle and verified the vehicle's VIN.  (*Id*. at 3-4).  At that point, Plaintiff's husband, Robert Chavez, who had been waiting for Plaintiff outside the grocery store, approached Shell and asked him what they were doing.  (*Id*. at 4).  Robert Chavez testified that, in response to his question, Shell said he was towing the vehicle and, when Robert Chavez responded, "[y]ou're not towing my car," Shell said he was required to.  (*Id*. at 4).  At that point, Shell stopped the towing process while Robert Chavez called Plaintiff, who then came out of the grocery store to ask what Shell was doing.  (*Id*. at 4-5).

Both Plaintiff and her husband testified that Shell told Plaintiff that he was towing the vehicle, Chavez responded that he could not tow the vehicle, and Shell responded he had to and gave Chavez a number to call.  (*Id*.).  Chavez told Shell several times that he could not take the vehicle and "repeatedly begg[ed] him not to take it."  (*Id*. at 10).  Chavez called the phone number and spoke to Ford, whose representative explained that Chavez's vehicle was being repossessed due to late payments and denied Chavez the opportunity to pay the following day.  (*Id*.).  After the phone call, Chavez asked a friend in the parking lot to drive them home because her car was getting towed.  (*Id*. at 6).  Chavez also testified that she said things to Shell like, "[d]on't take my car. You're not taking my car. I do not want you to take my car."  (*Id*. at 10).  Chavez alleges that, after the conversation with Ford, Robert Chavez also continued to repeatedly object to the repossession.  (*Id*.).  Chavez does not recall how Shell obtained her keys to the vehicle but testified that WIRB

1  ultimately towed the vehicle to the Chavez house, so they could remove their personal
2  belongings before the vehicle was repossessed.  (*Id.* at 7).  Chavez's friend drove them
3  home.  (*Id.*).

4       Chavez testified that the driver raised his voice and was "stern;" however, Robert
5  Chavez stated that he did not recall the driver raising his voice at him.  (Doc. 52 at 8-9).
6  Plaintiff and Defendant agree that the driver of the tow truck never physically engaged with
7  Plaintiff or her husband, used abusive or offensive language, or made any threats of
8  violence.  (*Id.*).  Chavez testified that she did not do anything to physically prevent the
9  Driver from taking the vehicle.  (*Id.*).

10  **LEGAL STANDARD**

11       A court must grant summary judgment "if the movant shows that there is no genuine
12  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
13  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The
14  movant bears the initial responsibility of presenting the basis for its motion and identifying
15  those portions of the record which it believes demonstrate the absence of a genuine dispute
16  of material fact.  *Celotex*, 477 U.S. at 323.

17       If the movant fails to carry its initial burden of production, the nonmovant need not
18  produce anything.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099,
19  1102-03 (9th Cir. 2000).  But if the movant meets its initial responsibility, the burden shifts
20  to the nonmovant to demonstrate the existence of a material, factual dispute.  *Anderson v.*
21  *Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  Specifically, "[o]nly disputes over facts
22  that might affect the outcome of the suit under the governing law will properly preclude
23  the entry of summary judgment."  *Id.* at 248.  The nonmovant need not establish a material
24  issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S.
25  253, 288 (1968); however, it must "come forward with specific facts showing that there is
26  a genuine issue for trial."  *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.*, 475
27  U.S. 574, 587 (1986) (internal citation omitted).

28       In its analysis, the reviewing court must take the evidence of the non-moving party

1    as true and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. The
2    court "need consider only the cited materials, but it may consider other materials in the
3    record." Fed. R. Civ. P. 56(c)(3).

4                                    **DISCUSSION**

5          Chavez alleges WIRB's repossession of her vehicle violated two statutes: (1) the
6    federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692f, and (2) Arizona
7    statute granting secured parties' rights to take possession of property after default under
8    certain circumstances, A.R.S. § 47-9609 ("Self-Help statute"). The FDCPA prohibits a
9    collector from taking or threatening to take any nonjudicial action to dispossess property if
10   "there is no present right to possession of the property claimed." 15 U.S.C. § 1692f(6)(A).
11   Whether a collector has a present right to possession depends on state law. The relevant
12   Arizona Self-Help statute dictates that a secured party has a right to take possession of
13   property after default "without judicial process, if it proceeds without breach of the peace."
14   A.R.S. § 47-9609(B)(2). Notably, the statute is adopted from the Uniform Commercial
15   Code, U.C.C. § 9-609.

16         Whether Chavez prevails on both claims hinges on whether Chavez plead enough
17   credible facts which, when taken as true, demonstrate a breach of the peace. *See Anderson*,
18   477 U.S. at 255. To make this determination, the Court must first decide whether
19   repossession despite oral opposition by a debtor, and nothing more, constitutes a breach of
20   the peace.

21         As explained below, repossession in the face of oral opposition alone does not
22   constitute a "breach of the peace" under Arizona's Self-Help statute. Thus, viewing the
23   facts in the light most favorable to the non-moving party, Chavez fails to raise a genuine
24   dispute of material fact regarding whether a breach of the peace occurred, and summary
25   judgment is appropriate on the Arizona Self-Help statute. Because the Court finds no
26   breach of the peace under Arizona's Self-Help statute, Chavez's FDCPA claim fails as
27   well, as there is no evidence to support her claim that WIRB lacked a right to repossess the
28   vehicle.

**I.      Arizona Self-Help Statute Claim**

**a.  Verbal Protest to Repossession, Without More, Is Insufficient to Be a Breach of the Peace**

Arizona Self-Help law permits a secured party to take possession of property after default "without judicial process, if it proceeds without breach of the peace."  A.R.S. § 47-9609(B)(2).   The statute does not define a breach of the peace.   Because the Arizona Supreme Court has never interpreted the meaning of "breach of the peace," at least in a civil context, this Court "must predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance."  *Vestar Dev. II, LLC v. Gen. Dynamics Corp.*, 249 F.E3d 958, 960 (9th Cir. 2001).

**i.  Arizona Intermediate Appellate Court Decisions**

While Arizona courts have not defined breach of the peace in this context, they have held that the "facts of each individual case must be evaluated to determine if a breach of the peace has occurred."  *Griffith v. Valley of Sun Recovery and Adjustment Bureau, Inc.*, 613 P.2d 1283, 1285 (Ariz. Ct. App. 1980) (quoting *Walker v. Walthall*, 588 P.2d 863, 864 (Ariz. Ct. App. 1978)).

"Where there is no convincing evidence that the state supreme court would decide differently, a federal court is obligated to follow the decisions of the state's intermediate appellate courts."  *Vestar*, 249 F.3d at 960.   One Arizona Court of Appeals decision provides at least some substantive guidance on what "breach of the peace" means, while a second mandates how a court should go about interpreting "breach of peace" as part of the Arizona U.C.C. statute.

In *Walker v. Walthall*, 588 P.2d 863 (Ariz. Ct. App. 1978), Walker, the secured party, had a sheriff's deputy in full uniform accompany him in his attempt to repossess a vehicle in debtor Walthall's possession.  During the repossession, Walker "ultimately obtained Walthall's consent to take possession of the vehicle."  *Id*. at 864.  Quoting with approval from a Washington state case, the *Walker* Court noted that, as a result of being

accompanied by the deputy sheriff, Walker breached the peace because the "unauthorized actions of the sheriff in aid of [Walker] amounted to constructive force, intimidation and oppression constituting a breach of the peace." *Id.* at 865.  Thus, as analyzed by the Court of Appeals, a breach of the peace "amount[s] to constructive force, intimidation" or oppression.  No fact here suggests that anyone involved in the repossession used constructive force, intimidation, or oppression.

In *Rand v. Porsche Fin. Serv.*, 167 P.3d 111, 120 (Ariz. Ct. App. 2007), a § 1983 action, the Arizona Court of Appeals considered the question whether the duty to repossess property without breaching the peace was a non-delegable duty.  In other words, the Court considered whether a repossessing creditor could be liable for a breach of the peace committed by an independent contractor the creditor hired to repossess a vehicle.  *Id.* at 119.  In determining that the duty was non-delegable, the Court interpreted "Arizona's U.C.C. liberally" and applied its underlying purpose to "make uniform the law among the various jurisdictions." *Id.* at 120.  Finding that the majority of jurisdictions held that the duty was non-delegable, it interpreted Arizona's law as consistent with the majority of jurisdictions.  *Id.* at 117.

### ii.  Decisions from Other Jurisdictions

Thus, pursuant to Arizona law and Ninth Circuit procedure for determining Arizona law, the Court next turns to how state and federal courts across the country have interpreted "breach of the peace" in the repossession context.  *See Rand*, 167 P.3d at 120 (holding that Arizona statute requires courts to review decisions of other jurisdictions that have interpreted provisions of the U.C.C. to determine the meaning of Arizona's U.C.C.); *see also Vestar*, 249 F.3d at 960 (holding that Ninth Circuit procedure requires federal courts to use decisions from other jurisdictions as guidance in predicting how the highest state court would decide the issue).

The District of Arizona granted a motion for default judgment against a repossessor under both Arizona's Self-Help statute and the FDCPA for breaching the peace; however, because the defendant failed to appear or otherwise respond, the issue of whether there was a "breach of the peace" was not litigated.  *Stewart v. Sw. Title Loans Inc.*, No.CV-20-

01873-PHX-DLR, 2022 WL 508827, at *1 (D. Ariz. Jan. 24, 2022). The *Stewart* court nevertheless concluded, based on the pleadings, that "there was a breach of the peace both because [Plaintiff] protested the repossession and because [the repossessor] damaged [Plaintiff's] property during the course of the repossession." *Id.* This is consistent with the guidelines set forth in *Walker* in that it was a case-specific inquiry, *see Walker*, 588 P.2d at 864, and the court ultimately took both the property damage and protest into consideration in making the determination. *See Stewart*, 2022 WL 508827, at *1. On no other occasion have Arizona courts addressed the meaning of breach of the peace for the purposes of Arizona's Self-Help statute.

Oral protest to repossession is a factor that federal and state courts consider in determining whether a repossession breached the peace, but oral protest alone does not qualify for such a finding.[2] *See Clarin v. Minn. Repossessors, Inc.*, 198 F.3d 661, 664 (8th Cir. 1999) (holding debtor's unequivocal oral protest did not amount to a breach of the peace when considering "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and

---

[2] Courts find breach of peace where there is oral opposition in conjunction with other factors present. *See McLinn v. Thomas Cty. Sheriff's Dep't*, 535 F. Supp. 3d 1087 (D. Kan. 2021) (oral protest plus yelling, physical intimidation, law enforcement intervention); *Darren Trucking Co. v. Paccar Fin. Corp.*, No. GJH-18-3936, 2019 WL 3945103 (D. Md. Aug. 20, 2019) (oral objection plus verbal escalation, police intervention); *Duke v. Garcia*, No. 11-cv-784, 2014 WL 1318646 (D.N.M. Feb. 28, 2014) (oral demand plus screaming, police involvement, physical shoving); *State v. Trackwell*, 458 N.W.2d 181 (Neb. 1990) (assumed oral protest plus yelling, physical obstruction and altercation, trespass); *Fulton v. Anchor Savs. Bank, FSB*, 452 S.E.2d 208 (Ga. Ct. App. 1994) (oral opposition plus trespass, physical obstruction, police involvement); *First Farmers Bank of Somerset, Inc.*, 763 S.W.2d 137 (Ky. Ct. App. 1988) (oral opposition plus probable physical conflict thwarted by police involvement); *Morris v. First Nat'l Bank and Trust Co. of Ravenna*, 254 N.E.2d 683 (Ohio 1970) (oral protest plus physical confrontation, trespass, physical intimidation); *Kensinger Acceptance Corp. v. Davis*, 269 S.W.2d 792 (Ark. 1954) (oral protest plus physical obstruction, threats of violence); *Fleming-Dudley v. Legal Investigations, Inc.*, No. 05-C-4648, 2007 WL 952026 (N.D. Ill. 2007) (oral objection plus yelling, deception, threats of legal action) (sufficient to survive a motion to dismiss); *Shue v. JMAC Distrib., LLC*, No. 23-cv-12152, 2024 WL 3849538 (D. Mass. Aug. 16, 2024) (oral objection plus physical obstruction, police involvement) (sufficient to survive a motion to dismiss); *Thomas v. Gen. Motors Fin. Co., Inc.*, No. 5:19-CV-1418, 2020 WL 8771387 (W.D. Tex. Mar. 18, 2020) (oral protest plus physical obstruction) (sufficient to survive a motion to dismiss); *Shelton v. Marshall*, 724 F. Supp. 3d 532 (W.D. Va. 2024) (oral objection plus police involvement); *Byrd v. Hyundai Motor Fin.*, No. 8:23-cv-1254, 2023 WL 8543709 (M.D. Fla. Dec. 11, 2023) (oral objection plus yelling, physical obstruction).

(5) the creditor's use of deception"); *see also Rivera v. Dealer Funding, LLC*, 178 F.Supp.3d 272, 279 (E.D. Pa. 2016) ("Jurisdictions that do not have a set of factors to consider when determining whether there has been a breach of the peace . . . focus almost entirely between the interactions of the debtor and creditor at the time of repossession, such as force or threats of force, trespass, or verbal objections.").  Of the few cases in which courts are presented with facts that include verbal objections, without more, a majority of those courts have held that verbal protest is not enough to establish a breach of the peace.[3] *See Gill v. Bd. of Nat'l Credit Union Adm' for Sikh Fed. Credit Union*, No. 93-1597, 2018 WL 5045755, at *11 (E.D.N.Y. October 16, 2018) (holding that the repossession of a vehicle parked on a public street and during which the debtor and creditor argued in a heated manner was not a breach of the peace because "nothing in the record . . . describe actions or discussions that caused consternation or alarm in any third party, or were of a kind likely to produce violence").  Other district courts have similarly determined oral objection, without more, is not enough to constitute a breach of the peace.  *See Garcia v. Dezba Asset Recovery, Inc.*, 665 F.Supp.3d 390, 408 (S.D. N.Y. 2023) (holding Plaintiff did not plead facts sufficient to constitute a breach of the peace by alleging he confronted the repossessor and advised him not to repossess the vehicle); *see also Rumain v. Gregoris Motors, Inc*., 17-cv-7251, 2024 WL 4250251, at *11 (E.D. N.Y. June 21, 2024) (holding Plaintiff did not allege facts establishing a breach of the peace by claiming that she objected to the tow); *see also Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1171, 1174 (Ill. App. 1996) (holding unequivocal oral protest, without more, insufficient to be considered a breach of the peace).

Of the cases Plaintiff identifies to support her proposition that repossession over the

---

[3] Other district courts have similarly determined oral objection, without more, is not enough to constitute a breach of the peace.  *See Garcia v. Dezba Asset Recovery, Inc.*, 665 F.Supp.3d 390, 408 (S.D. N.Y. 2023) (holding Plaintiff did not plead facts sufficient to constitute a breach of the peace by alleging he confronted the repossessor and advised him not to repossess the vehicle); *see also Rumain v. Gregoris Motors, Inc*., 17-cv-7251, 2024 WL 4250251, at *11 (E.D. N.Y. June 21, 2024) (holding Plaintiff did not allege facts establishing a breach of the peace by claiming that she objected to the tow); *see also James v. Ford Motor Credit Co.*, 842 F.Supp. 1202, 1208-09 (D. Minn. 1994) ("[D]efendants did not lose the present right of repossession merely because James said she did not want the car taken away.")

oral objection of a debtor is a breach of the peace, almost none support that proposition in the actual holdings.  Instead, the language is often dicta, based on a White & Summers treatise which, even in its 2022 edition, does not accurately reflect legal precedent.  *See* JAMES J. WHITE ET AL, UNIFORM COMMERCIAL CODE, § 25-7 (7th ed. 2022).  The treatise states that "the debtor's opposition–however slight and even if merely oral–normally makes any entry or seizure a breach of the peace." *Id.* at 1248.  However, to support this proposition, the treatise cites only one case that found a breach of peace, and even that case includes facts in which the debtor "yell[ed] at and pursue[d] [the] repossessing party on foot"–more than slight and merely oral opposition[4]. *Id.* at 1248, n.36.

Plaintiff cites *Hensley v. Gassman*, in which the court stated, "an objection, particularly when it is accompanied by physical obstruction, is the debtor's most powerful (and lawful) tool in fending off an improper repossession because it constitutes a breach of the peace requiring the creditor to abandon his efforts to repossess."  693 F.3d 681, 689-90 (6th Cir. 2012) (citing, in part, to JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE § 34-8 at 477 (6th ed. 2010)).  However, the facts of *Hensley* include much more than oral opposition.  The debtor physically opposed the repossession by getting into the car, starting it, and locking the doors; there was shouting; the police were involved; and a police officer threated to break the car's window. *Id.* at 685.

Even Plaintiff's cases not relying on the White & Summers treatise still involved more factors than just verbal protest to guide the courts' decisions.  For example, the court in *Marcus v. McCollum* stated, "[t]he general rule is that a debtor's request for the financer

---

[4] The treatise cited two other cases to support its proposition.  In *Chrysler Credit Corp. v. Koontz*, 661 N.E.2d 1177, 1174 (Ill. App. Ct. 1996), the court explicitly rejected the proposition that unequivocal oral protest, alone, constituted a breach of peace because "to rule otherwise would be to invite the ridiculous situation whereby a debtor could avoid a deficiency judgment by merely stepping out of his house and yelling once at a nonresponsive repossessor."  It instead held that "breach of the peace connotes conduct which incites or is likely to incite immediate public turbulence, or which leads to or is likely to lead to an immediate loss of public order and tranquility." *Id.* at 1173.  The third case the treatise cites is *Clark v. Auto Recovery Bureau Conn., Inc.*, 889 F.Supp. 543 (D. Conn. 1994), which also fails to support the treatise's proposition.  In *Clark*, the court held that where a debtor is restrained by a person not connected with the repossession, there is no breach of the peace, especially where the confrontation occurred after the repossessor had gained control of the car. *Id.* at 547.

to leave the car alone must be obeyed . . . [e]ven polite repossessors breach the peace if they meet resistance from the debtor." 394 F.3d 813, 820 (10th Cir. 2004). However, the facts in *Marcus* included more than a request to leave the car alone: "[p]laintiffs initially resisted the repossession by objecting with raised voices and attempting to unhook the automobile from the tow truck[, a]nd only after the police intervention did plaintiffs quit their efforts to stop the repossession." *Id.* at 822-23.

### iii. The *Hollibush* Decision

Plaintiff cites one case which supports her proposition in its holding. *See Hollibush v. Ford Motor Credit Co.*, 508 N.W.2d 449, 455 (Wis. Ct. App. 1993) ("The undisputed fact is that [Plaintiff] or her fiancé told [the repossessor] that he was not to repossess the vehicle, and that he nonetheless did so. We conclude that this constitutes a breach of the peace."). Not only is this single case insufficient to constitute a majority interpretation of the U.C.C., which Arizona law instructs this Court to adopt, *see Rand*, 167 P.3d at 120, but the *Hollibush* holding is based on an incorrect interpretation of law. Specifically, the *Hollibush* court relied on cases and treatises which interpreted the meaning of "breach of the peace" to reach its conclusion that there is a breach of peace when property is repossessed despite "a debtor's affirmative statement . . . that the collateral may not be taken." *Hollibush*, 508 N.W.2d at 452-53. But the extent to which these cases and treatises support the *Hollibush* court's conclusion—many did not—that support is only in the form of dicta.

For example, the *Hollibush* court first cites Blackstone's Commentaries as a source of "pre-Code authority." *Id.* at 807. Yet, in describing the circumstances under which a person's "natural right of recaption" would breach the peace, Blackstone wrote that the right of recaption "shall never be exerted where such exertion must occasion strife and bodily contention, or endanger the peace of society." *Id.* (quoting 3 W. BLACKSTONE, COMMENTARIES *4-5). Recaption could only be done "without force or terror." *Id.* This pre-Code authority suggests "breach of the peace" meant much more than oral objection. In fact, the word "strife" means "a bitter sometimes violent conflict or dissention; an act of

contention: fight, struggle." *Strife*, MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/strife (last visited Oct. 30, 2024). Verbal protest, without more, is not strife and not, based on Blackstone's Commentaries, a breach of the peace.

The *Hollibush* court next quotes from a White and Summers' Treatise on Self-Help Repossession: "[w]hen the creditor repossesses in disregard of the debtor's unequivocal oral protest, most courts find the creditor guilty of a breach of the peace." *Hollibush*, 508 N.W.2d at 808 (quoting JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE ("W&S TREATISE") § 27-6, at *580 (3d ed. 1988)). To support its reliance on this quote, the *Hollibush* court examined some of the cases the W&S Treatise relied on to support its assertion. *Id.* at 808-09. But the *Hollibush* court erred in its examination of the cases and wrongly concluded the W&S proposition is supported by caselaw. It is not.

For example, the W&S Treatise cites *Manhattan Credit Co. v. Brewer*, 341 S.W.2d 765 (Ark. 1961), to support its proposition that "most courts find the creditor guilty of a breach of the peace" for repossession in "disregard of the debtor's unequivocal oral protest." W&S TREATISE § 27-6, at *580 n.34. Yet, in *Brewer*, an agent repossessed a car from a debtor's driveway against the debtor's verbal objection. *Brewer*, 341 S.W.2d at 767. If the facts had ended there, perhaps the holding would support the W&S proposition. However, the debtor proceeded to follow the agent to a filling station, "demand[] the agent" unhook the car, tell the agent he could not take the car, and then turn the ignition to the car off while the agent was getting into it. *Id.* "[T]he agent turned the ignition back on starting the motor, and started backing out of the filling station, causing [the debtor] to have to get out of the way." *Id.* Applying the rule that "there is a conversion if force or threats of force are used to secure possession of [a car]," the *Brewer* court determined the repossession was not done peacefully. *Id.* This does not support the W&S proposition. The *Hollibush* court tried to validate the citation by explaining that, "[t]hough it is unclear what part a later confrontation at a garage played in the court's decision, it is plain that the court considered the debtor's objection the deciding factor." *Hollibush*, 179 Wis.2d at 808.

1    There is nothing in the *Brewer* opinion to support that conclusion.  *See Brewer*, 341 S.W.2d

2    at 767-68.  Rather, it seems the debtor's objection was one of several factors the *Brewer*

3    court considered in making its determination.  *Id.*

4          The W&S Treatise also cites *Wilson v. Kuykendall*, 73 So. 344 (Miss. 1917), and

5    *Morrison v. Galyon Motor Co.*, 64 S.W.2d 851 (Tenn. 1932), to support its proposition that

6    a creditor breaches the peace when repossessing in disregard of the debtor's oral protest.

7    W&S TREATISE, § 27-6, at *580 n.34.  Neither case supports it.  The *Hollibush* court, in its

8    examination of *Wilson*, drew the following conclusion: "the creditor took a mule from the

9    debtors' barn over their objection. The court affirmed a judgment in the debtors' favor,"

10   suggesting the *Wilson* court was persuaded by oral objection, alone.  *Hollibush*, 179 Wis.2d

11   at 808.  This is wrong.  In fact, the creditor trespassed, took the mule despite protest, and

12   brought two other individuals with him to execute the repossession.  *Wilson*, 73 So. at 344.

13   The wife of the debtor was "frightened and disturbed by the conduct of the [creditors],"

14   and the law the *Wilson* court applied was that "a party has not the right to invade the

15   premises of another and take from the possession of the other party by force or against the

16   will of the party in possession any property."  *Id.*  Even reading "against the will of the

17   party in possession" to mean against oral objection, alone, the court in this case was

18   confronted with both oral objection and trespass–more than just oral objection.  *Id.*

19         The court in *Morrison* was not confronted with a breach of the peace.  *Morrison*, 64

20   S.W.2d at 853.  In fact, the debtor was not present at the time of the repossession.  *Id.*  The

21   *Morrison* court noted that, had the debtor been present to object to the repossession, "then

22   the agent would not have been authorized to physically take possession of the truck against

23   their consent for such an action would be calculated to provoke a breach of the peace."

24   *Morrison*, 64 S.W.2d at 853.  But this is dicta.  The debtor was not present at the time of

25   the repossession.  *Id.*

26         Thus, despite the *Hollibush* court's best efforts to legitimize the W&S Treatise

27   proposition that disregard of a debtor's verbal opposition is enough to breach the peace, it

28   is unsubstantiated.  As noted above, even the 7th edition of the W&S Treatise, released in

2022, does not accurately reflect legal precedent on this matter.  *See* JAMES J. WHITE ET AL, UNIFORM COMMERCIAL CODE, § 25-7 (7th ed. 2022).

To conclude its justification for understanding repossession in the face of verbal opposition, alone, to constitute a breach of the peace, the *Hollibush* court draws on quotes from three cases, which it found support the assertion that "no means no."  *See* 179 Wis.2d at 810-11.  None do.  *Dixon v. Ford Motor Credit Co.* regurgitates the W&S Treatise proposition above; however, as established, that proposition is unsubstantiated.  *See* 72 Ill.App.3d 983, 988 (Ill. Ct. App. 1979).  Further, the issue of breach of the peace was not litigated in *Dixon*.  *Id.*  The *Hollibush* court quotes *Census Fed. Credit Union v. Wann* to support its proposition about verbal opposition, but the quote is dicta.  *See* 403 N.E.2d 348, 351-52 (Ind. Ct. App. 1980).  The facts of *Wann* include the repossession of a car from an apartment building parking lot at 12:30 a.m., in the absence of the defaulting party.  *Id.* at 350.  Finally, the *Hollibush* court quotes *First and Farmers Bank of Somerset, Inc. v. Henderson*: "it is clear that repossession in the face of the debtor's objection constitutes a breach of the peace."  763 S.W.2d 137, 140 (Ct. App. KY 1988).  Again, this is dicta.  In *First and Farmers*, the repossession included trespass, police intervention, and a confrontation that "could have led to a physical conflict."  763 S.W.2d at 139.  Ultimately, of the three cases the *Hollibush* court relied on to support its decision that "no means no" in the context of repossessions, none do.

Interpreting the Arizona Self-Help statute to mean that any verbal opposition to repossession is sufficient to breach the peace would conflict with Arizona law, given the interpretation reflects a minority interpretation, and an incorrect interpretation, at that.  This Court, instead, adopts the majority position that "merely expressing an objection to repossession, 'however strenuous, is not a breach of the peace unless accompanied by factors indicating that the activities of the repossession agent are of a kind likely to cause violence, or public distress and/or consternation."  *Labadie v. NU Era Towing and Service, Inc.*, No 20-722, 2022 WL 4287663, at *5 (W.D.N.Y. June 14, 2022), *report and recommendation adopted*, No. 20-722, 2022 WL 3593108 (W.D.N.Y. Aug. 23, 2022)

(quoting *Gill*, 2018 WL 5045755, *at 10).

> **b. Chavez Has Not Raised a Genuine Dispute of Material Fact Regarding Whether a Breach of The Peace Occurred.**

To survive a summary judgment motion, the nonmoving party must demonstrate the existence of a material, factual dispute. *Anderson*, 477 U.S. at 250. Only disputes over outcome-determinative facts will preclude summary judgment. *Id.* Chavez argues that a "jury be permitted to . . . determine whether showing up to the grocery store and taking the debtor's family car over her and her spouse's repeated objections constitutes a breach of the peace." (Doc. 43 at 10). Here, the parties dispute the quantity and timing of verbal objections made by Chavez and Robert Chavez before Chavez's phone call with Ford and whether objections continued thereafter. (Doc 52 at 4, 9, 10). However, even if the Court takes all Chavez's credible facts as true, drawing all justifiable inferences in its favor, there is no genuine issue for trial. *See Anderson*, 477 U.S. at 255.

Five factors are instructive in determining whether there was a breach of the peace: "(1) where the repossession took place, (2) the debtor's express or constructive consent, (3) the reactions of third parties, (4) the type of premises entered, and (5) the creditor's use of deception." *Hansen v. Santander Bank, N.A.*, 689 F.Supp.3d 679, 689 (D. Minn. 2023) (quoting *Clarin*, 198 F.3d at 664). Evaluating the alleged breach of the peace using these factors, a factfinder cannot plausibly conclude there was a breach of peace. The repossession took place in a public parking lot. (Doc. 52 at 3). Although Chavez did not give express consent, as she verbally protested both before and during the repossession, she was given the opportunity to call Ford. (*Id.* at 5). After the calls, the repossessors used the car keys to tow the vehicle and follow Chavez to her home, so she could remove personal items from the vehicle. (Doc. 52 at 7). There was no third-party intervention, and Chavez does not allege there was trickery or deception in the repossession. (Doc. 52). These facts are similar to those assessed in *Clarin*, which the Eighth Circuit found "did not rise to a breach of the peace [and] . . . to rule otherwise would be to invite the ridiculous situation whereby a debtor could avoid a lawful self-help repossession by merely stepping out of his house and yelling once at a nonresponsive repossessor." 198 F.3d at 664 (internal

quotations omitted).

Chavez distinguishes her case from *Clarin* by noting that "in [*Clarin*] the debtor stopped protesting the repossession after being permitted to call the lender," and in this case, Chavez and Robert Chavez continued objecting to the repossession after Chavez got off the phone with Ford.  (Doc. 43 at 10-11; Doc. 52 at 10).  Chavez cites to *Aviles v. Wayside Auto Body, Inc.*, 49 F. Supp. 3d 216, 227 (D. Conn. 2014), to support the significance of this distinction, stating the *Aviles* court "den[ied] repossession agency's motion for summary judgment, and reject[ed] its reliance on *Clarin* as inapplicable, because 'the plaintiff in that case ceased protesting the repossession before the vehicle was removed, which the court construed as constructive consent.'"  (Doc. 43 at 11).  Chavez asks this Court to apply the same logic.  However, the ceased protesting was not the only grounds upon which the *Aviles* court decided not to apply *Clarin*.  In fact, the facts of *Aviles* are different from the facts of *Clarin*, as well as the facts of this case; the repossessor began repossessing the car while a woman was still in it, yelled at the woman to "get the [expletive deleted] out of the car," and screamed at the debtor when he arrived after being informed of the altercation by a third party.  *Aviles*, 49 F. Supp. 3d at *220-21.  The *Aviles* court explicitly cited this conduct as part of its justification for not relying on *Clarin*, explaining that, in *Clarin*, "there was no indication that the repossessors themselves ever raised their voices or used expletives."  *Id*. at *227.

During her deposition, Chavez testified that the repossession agent raised his voice and was very stern with her; however, she also testified that neither repossessor threatened her with physical violence and that she could not recall the use of foul language or physical contact between the parties.  (Doc. 44-2 at 31; Doc. 52 at 9).  Chavez also testified that she did nothing to physically prevent the repossession.  (*Id*. at 37).  When asked if she stood in the repossessors' way to prevent the vehicle from being towed, Chavez testified that she "told him verbally several times, 'Don't take my car. You're not taking my car. I do not want you to take my car. You're not allowed to take my car. Please don't take my car.' But I didn't yell at him or push him."  (*Id*.).  Neither Chavez nor Robert Chavez recall how the

repossessors got the keys to her car.  (Doc. 52 at 8; Doc. 44-3 at 19-20).  However, they cooperated in driving back to their house in a friend's car, with the repossessors following behind in the tow truck, so Chavez and Robert Chavez could remove their personal items from the vehicle.  (Doc. 52 at 7).  In light of these facts, even if Chavez continued to verbally object after her conversation with Ford, Chavez has not raised a genuine dispute of material fact as to whether the verbal protests breached the peace.

## II.     Fair Debt Collection Practices Act Claim

Because there is no breach of the peace under Arizona's Self-Help statute, A.R.S. § 47-9609, Plaintiff's Fair Debt Collection Practices Act claim fails as well.  The FDCPA requires a collector taking or threatening to take property have a "present right to possession of the property claimed."  15 U.S.C. § 1692.  Here, WIRB had a right to possession under Arizona's Self-Help statute.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant WIRB's Motion for Summary Judgment (Doc. 41) is **GRANTED**.

**IT IS FURTHER ORDERED** denying Plaintiff's Motion for Leave to File Supplemental Briefing (Doc. 57).

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this matter as to Defendant WIRB.

Dated this 26th day of November, 2024.

G. Murray Snow
Senior United States District Judge